1  Thomas M. McInerney CA Bar No. 162055
   thomas.mcinerney@ogletree.com
2  Graham M. Helm CA Bar No. 316002
   graham.helm@ogletree.com
3  Rabbie Mojaddidi CA Bar No. 322348
   mohammad.mojaddidi@ogletree.com
4  OGLETREE, DEAKINS, NASH, SMOAK &
   STEWART, P.C.
5  One Embarcadero Center, Suite 900
   San Francisco, CA  94111
6  Telephone:    415-442-4810
   Facsimile:    415-442-4870
7
   Attorneys for Plaintiff
8  WILLIAM WELCH

9              **UNITED STATES DISTRICT COURT**

10             **NORTHERN DISTRICT OF CALIFORNIA**

11

12  WILLIAM WELCH,                        Case No. 3:25-cv-04738

13          Plaintiff,                    **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL**

14      v.

15  TALKDESK, INC.
                                          Complaint Filed:  June 4, 2025
16          Defendant.

Plaintiff WILLIAM WELCH ("Plaintiff") files this Complaint for Damages and Equitable Relief against Talkdesk, Inc. ("Talkdesk"), and asserts the following:

**INTRODUCTION**

1. This case is brought against Talkdesk related to its unlawful use of restrictive covenants, including employee non-solicitation provisions, that violate California law. Talkdesk's business practice of using these unlawful provisions against Plaintiff and with other current and former employees of Talkdesk, is aimed at stifling lawful competition for talent, constitutes acts of unfair business practices and competition, and blatantly violates various sections of California law, including but not limited to sections 16600, 16600.1, 16600.5, and 17200 of the California Business & Professions Code. Plaintiff seeks money damages, attorneys' fees, and declaratory and other equitable relief related to these unlawful actions by Talkdesk and its corporate leaders, including but not limited to Tiago Paiva.

2. Since 1872, it has been the public policy of California to prohibit restrictive covenants in employment agreements. Section 16600(a) of the California Business and Professions Code provides, in relevant part, "[E]very contract by which anyone is restrained from engaging in a lawful profession, trade or business of any kind is to that extent void." This statute reflects a well-established, strong public policy of the State of California that employees have the right to pursue any lawful employment and enterprise of their choice in California, without being subject to illegal contractual restraints. An employee's freedom of movement among employers has been consistently and repeatedly recognized as paramount to the competitive business interests of an employer.

3. The seminal case regarding section 16600 in the employment context is Edwards v. Arthur Andersen LLP, 44 Cal. 4th 937 (2008). The Edwards court explained that section 16600 is "unambiguous," and that the statute's "plain meaning" is that "an employer cannot by contract restrain a former employee from engaging in his or her profession, trade, or business unless the agreement falls within one of the exceptions to the rule." Id., at 946-947. Edwards "rejected" the "argument that the Legislature meant the word 'restrain' in section 16600 to mean 'prohibit,' such that a mere limitation on an employee's ability to practice his or her vocation would be permissible

1  under section 16600, as long as it was reasonably based." AMN Healthcare, Inc. v. Aya
2  Healthcare Servs., Inc., 28 Cal. App. 5th 923, 938-939 (2018) (internal quotation marks omitted),
3  citing Edwards, 44 Cal. 4th at 945, 947, 949-950.

4      4.    Effective January 1, 2024, the California Legislature adopted a statute reaffirming
5  the state's long-held prohibition against employment restrictive covenants under California law.
6  The Legislature adopted section 16600.5 of the Business & Professions Code which provides, in
7  subsection (a), that "[a]ny contract that is void under this chapter is unenforceable regardless of
8  where and when the contract was signed." Subsection (b) of section 16600.5 further provides that
9  an "employer or former employer shall not attempt to enforce a contract that is void under this
10 chapter regardless of whether the contract was signed and the employment was maintained outside
11 California." Subsection (c) of section 16600.5 also provides that an "employer shall not enter into
12 a contract with an employee or prospective employee that includes a provision that is void under
13 this chapter." Subsection (d) of section 16600.5 provides that an "employer that enters into a
14 contract that is void under this chapter or attempts to enforce a contract that is void under this
15 chapter commits a civil violation," which is $2,500 pursuant to section 17206 of the Business &
16 Professions Code. Subsection (e) of section 16600.5 provides that an "employee, former
17 employee, or prospective employee may bring a private action to enforce this chapter for injunctive
18 relief or the recovery of actual damages, or both," and that in addition to these remedies, a
19 "prevailing employee, former employee, or prospective employee in an action based on a violation
20 of this chapter shall be entitled to recover reasonable attorney's fees and costs."

21     5.    In addition, effective January 1, 2024, the Legislature also adopted section
22 16600.1(a) of the Business & Professions Code, which provides, "It shall be unlawful to include a
23 noncompete clause in an employment contract, or to require an employee to enter a noncompete
24 agreement, that does not satisfy an exception in this chapter." Subsection (b)(1) of section 16600.1
25 further provides, "For current employees, and for former employees who were employed after
26 January 1, 2022, whose contracts include a noncompete clause, or who were required to enter a
27 noncompete agreement, that does not satisfy an exception to this chapter, the employer shall, by
28 February 14, 2024, notify the employee that the noncompete clause or noncompete agreement is

1   void." This notice was required to be in the form of a written, individualized communication to the
2   employee or former employee, and "shall be delivered to the last known address and the email
3   address of the employee or former employee." Subsection 16600.1(c) further provided that the
4   failure to provide this individualized written notice constitutes an act of unfair competition.

5         6.      The purpose of these laws could not be clearer. Indeed, the California Legislature
6   expressly stated that the expanded restrictions and related consequences are intended to: (i) respond
7   to an increasingly remote talent market, in which "California employers increasingly face the
8   challenge of employers outside of California attempting to prevent the hiring of former
9   employees"; and (ii) to preserve the state's "competitive business interests" by "protecting the
10  freedom of movement of persons whom California-based employers wish to employ to provide
11  services in California, regardless of the person's state of residence." 2023 Cal. S.B. No. 699
12  (2023-2024 Regular Session).

13        7.      To this end, the California Supreme Court has repeatedly made clear that section
14  16600 of the Business & Professions Code "represents a strong public policy of the state."
15  Edwards, 44 Cal. 4th at 950. Section 16600 broadly prohibits "any" restrictive covenants that
16  restrain California employees from engaging in a lawful profession, trade, or business. In the years
17  since section 16600 was enacted, California courts have "consistently affirmed that section 16600
18  evinces a settled legislative policy in favor of *open competition and employee mobility*." Edwards,
19  44 Cal. 4th at 946 (emphasis added). This fundamental public policy against restrictive covenants
20  is so strong that California law prohibits even narrow restraints on an employee's ability to practice
21  his profession. *Id*. at 947.

22        8.      In AMN Healthcare, Inc., 28 Cal. App. 5th 923, the California Court of Appeal
23  applied Edwards when holding that a post-employment employee non-solicitation provision was
24  "void under section 16600." The court explained that pre-Edwards authority that upheld a non-
25  solicitation agreement as a limited restraint was no longer good law, and that " 'if the Legislature
26  intended [section 16600] to apply only to restraints that were unreasonable or overbroad, it could
27  have included language to that effect.' " Id. at 938–39 (quoting Edwards, 44 Cal. 4th at 950).
28  Because the employee non-solicitation provision at issue in AMN restrained the former employees

3
Case No. 3:25-cv-04738
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

1  from engaging in his or her "lawful profession, trade, or business," it was void.  Id.

2      9.   Court decisions since AMN, including many decisions in this District, have
3  uniformly applied that decision to invalidate post-termination employee non-solicitation
4  provisions.  See, e.g., Barker v. Insight Global, LLC, 2019 WL 17626, at *3 (N.D. Cal. Jan. 11,
5  2019) (". . . the Court is convinced by the reasoning in AMN that California law is properly
6  interpreted post-Edwards to invalidate employee nonsolicitation provisions."); WeRide Corp. v.
7  Kun Huang, 379 F. Supp. 3d 834, 852 (N.D. Cal. 2019) ("The Court finds the reasoning of Barker
8  and AMN, including their application of Edwards, to be persuasive" in invalidating employee non-
9  solicit "as a restraint on employment"); Olson v. World Financial Group Insurance Agency, LLC,
10 2024 WL 4681812, *4-5 (N.D. Cal. Nov. 4, 2024) (finding employee non-solicit clause unlawful
11 after Edwards); Parsable, Inc. v. Landreth, 2022 WL 19692034 (N.D. Cal. August 5, 2022)
12 (holding that prohibition on employee non-solicit applies outside context of recruiting); Conversion
13 Logic, Inc. v. Measured, Inc., 2019 WL 6828283, at *4 (C.D. Cal. Dec. 13, 2019) ("[G]iven the
14 strong California public policy to permit lawful employment and enterprise of choice, the Court
15 finds the [employee non-solicit] provisions void."); General Electric Company v. Uptake
16 Technologies, Inc., 394 F. Supp. 3d 815, 826-827 (N.D. Il. 2019) (applying California law and
17 holding that non-solicitation clauses violate section 16600).

18     10.  Accordingly, Talkdesk has violated this fundamental public policy of California by
19 attempting to enforce under California law its unlawful non-solicitation provisions against Plaintiff
20 and other employees.

21              **SUBJECT MATTER JURISDICTION AND VENUE**

22     11.  The jurisdiction of this Court over the subject matter of this action is predicated on
23 28 USC § 1332.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

24     12.  Plaintiff is an individual who is a citizen of the state of North Carolina.

25     13.  Plaintiff has had a long and storied professional career, with positions as Vice
26 President, Symantec Sales Specialists, Americas, with Symantec; Vice President & General
27 Manager, Americas, with HP Software; Chief Operating Officer (COO) with Zscaler; President and
28 COO with Duo Security; and Co-CEO with IronNet Cybersecurity.  While working for these

companies, Plaintiff developed professional relationships with a loyal team of very competent and highly qualified executive leaders and employees who have expressed the interest and desire in following him from company to company. These employees would continue to work with Plaintiff at the various companies he joined because they liked working for him, he treated employees fairly, he was ethical, and he paid employees fairly based on their talents.

14. Defendant Talkdesk is a Delaware Corporation which lists its principal place of business with the California Secretary of State as 201 Spear St., San Francisco, California 94105. Accordingly, Talkdesk is a citizen of Delaware and California.

15. Talkdesk, which operates globally, including throughout the United States, is a software company that according to its website offers "cloud-native, generative AI-powered CX platform, purpose-built industry solutions, and extensible AI offerings" for "enterprises in the cloud and on premises to deliver exceptional customer experiences that make them more competitive, grow revenue, reduce costs, and provide operational efficiencies."

16. Venue is proper in this Court because Talkdesk's principal place of business is in the jurisdiction covered by this Court and because a substantial part of the events or omissions giving rise to the claim occurred in this District. 28 U.S.C. § 1391(b)(1), (2).

### FACTUAL ALLEGATIONS

17. Plaintiff was recruited to join Talkdesk in 2022, and he was ultimately offered the position of President and COO of Talkdesk by Tiago Paiva, Talkdesk's founder and CEO. Plaintiff was hired, in part, due to his expertise running large technology organizations and his proven ability to build and develop a strong team of professionals.

18. Although Plaintiff continued to be a citizen of North Carolina, it was also expected that he would spend a considerable amount of his time working in California due to the fact that Talkdesk was headquartered in California, all of its board members were located in California, many of its employees were located in California, most of the executive team was located in California, and many investors and customers were located in California.

19. On February 22, 2023, Plaintiff was provided by Talkdesk with an Offer Letter Agreement that contained the terms of his employment. Other than the compensation terms,

Plaintiff did not negotiate the terms of this Offer Letter Agreement, and the provisions related to choice of law, forum selection, and employee non-solicitation were drafted entirely by Talkdesk without input from Plaintiff.  Plaintiff is informed and believes, and on that basis alleges, that the primary terms contained in the agreement were drafted by Talkdesk's Chief Legal Officer David Middler, with input from Paiva.  In addition to requiring a California choice of law and federal a forum selection clause calling for litigation in state or federal courts in California, this Offer Letter Agreement contained the following provision:

> **8.     No Solicitations**. In consideration for your employment with the Company, you agree that during the term of your employment, and for a period of 12 months thereafter, you shall not directly or indirectly induce or attempt to induce or otherwise counsel, advise, solicit, or encourage (i) any Company employee to leave the Company's employ or accept employment with any other person or entity; or (ii) any person who at the time of such inducement, counseling, advice, solicitation or encouragement had left the Company's employ within the previous six (6) months, to accept employment with any person or entity besides the Company. You agree that the restrictions imposed upon you by the provisions of this section are fair and reasonable considering the nature of the Company's business and are reasonably required for the Company's protection.

20.     As confirmed by many state and federal court decisions, this employee non-solicitation provision blatantly violates multiple provisions of California law, including sections 16600 and 16600.5 of the California Business & Professions Code.  For example, section 16600.5(c) provides, "An employer shall not enter into a contract with an employee or prospective employee that includes a provision that is void under this chapter."

21.     The Offer Letter Agreement further provided Plaintiff with equity compensation in the form of 1,180,916 restricted stock units ("RSUs") with respect to shares of the Talkdesk's Common Stock.  The Offer Letter Agreement provided that the grant of RSUs was subject to the terms and conditions applicable to the Company's RSUs granted under Talkdesk's 2014 Stock Plan or its successor.  The grant of RSUs were subject to two vesting conditions, both of which must be satisfied in order for the RSUs to vest and both of which were described in more detail in the applicable RSU Agreement: (1) a continuous service-based condition which will be satisfied as to 20% of the RSUs on the first annual anniversary of the vesting commencement date, and the balance of which will meet this condition in equal quarterly installments over the next 16 quarters of continuous service, and (2) a liquidity event condition that requires that the Company complete

either an initial public offering or certain sale events during the seven-year term of the RSUs. Plaintiff is informed and believes, and on that basis alleges, that based on a recent valuation of Talkdesk, his RSUs have a monetary value of several million dollars.

22. The Offer Letter Agreement also contained an integration clause that states that it "supersedes and replaces any prior agreements, representations or understandings (whether written, oral, implied or otherwise) between you and the Company and constitutes the complete agreement between you and the Company regarding the subject matter set forth herein." Accordingly, the Offer Letter Agreement is the controlling document memorializing the parties' agreement related to the employee non-solicit provision.

23. Talkdesk's 2014 Stock Plan provides, among other things, a provision regarding potential forfeiture of equity. Specifically, in section 2(e), it provides:

> **Forfeiture**. Notwithstanding anything else to the contrary in this Agreement or otherwise, if the Company determines that you have breached the written Employment and Confidentiality Agreement between you and the Company (or similar agreement entered into with the Company as part of your hiring process), if any, in any material way, then, *to the extent permitted by applicable laws*, you will forfeit or be required to pay to the Company, as applicable, (i) all RSUs then held (without regard to whether or not they are vested), (ii) any Shares you hold issued upon settlement of RSUs, and (iii) all proceeds received by you upon sale or transfer of Shares issued upon settlement of RSUs.

(emphasis added).

24. The 2014 Stock Plan contains a provision that purports to vest Delaware with the choice of law over the terms of that agreement, although the alleged forfeiture of his RSUs was dependent on compliance with applicable laws, which in this case, due to the choice of law provision in his Offer Letter Agreement, was California. This Stock Plan also contains a provision that states that "[f]or purposes of any action, lawsuit, or other proceeding brought to enforce this Agreement, relating to, or arising from it, the parties hereby submit to and consent to the sole and exclusive jurisdiction of the courts of San Francisco County, California, or the federal courts for the United States for the Northern District of California, and no other courts, where this grant is made and/or to be performed."

25. Plaintiff worked with Talkdesk for approximately a year and a half, until he resigned in November 2024 to take a position with another company, Sysdig, Inc. ("Sysdig"),

which is also based in California. It became apparent to Plaintiff after joining Talkdesk that he was not a good fit for working with Paiva, Talkdesk's founder and CEO. Paiva has a mercurial, difficult personality whose management style included disparaging employees behind their backs and engaging in other offensive behavior that led to high attrition. Shortly after joining Talkdesk, Plaintiff also developed concerns about Paiva's ethics, including his profligate spending of corporate funds on personal expenses. Paiva expressed the belief that employee who left Talkdesk were disloyal and worthy of retribution.

26. At one point, when Paiva was threatening an employee who had departed, Plaintiff said to Paiva words to the effect of, "Why are you doing this, these people are at-will employees, not indentured servants?" In response, Paiva was dismissive, indicating that he believed he needed to threaten departing employees to prevent them and others from leaving. As a result, including employee non-solicitation provisions in the employment contracts for his executives and other employees was a concerted business practice viewed as critical by Paiva to keep executives and employees from leaving Talkdesk.

27. Ultimately, Plaintiff was approached by representatives of his current employer, Sysdig, to join it as its new CEO. For a variety of reasons, including the desire to no longer work with Paiva, Plaintiff accepted the position of CEO at Sysdig, which has its principal place of business in San Francisco. In his role as CEO, Plaintiff is charged with overseeing the Sysdig's operations, including its California operations, and to help build the team in California and elsewhere. Although he continues to be based primarily in North Carolina, he spends a considerable amount of time traveling to and working in California. Because all of Sysdig's board members are based in California, much of Sysdig's executive team is based in California, a large portion of the Sysdig workforce is in California, and many of Sysdig's customers and prospective customers are in California, Plaintiff is required to spend a considerable amount of his time working with and building the Sysdig team in California. Accordingly, Plaintiff works in California multiple times a year, and his expertise in building a team in California is critical to his and Sysdig's success.

28. After Plaintiff informed Paiva of his intent to resign and take his new position with

8                     Case No. 3:25-cv-04738
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF; DEMAND FOR JURY TRIAL

Sysdig, Plaintiff is informed and believes, and on that basis alleges, Paiva told at least one other person that he wanted anyone associated with Plaintiff fired from Talkdesk.

29. On May 6, 2025, less than six months after Plaintiff had left Talkdesk, and consistent with past practice by Talkdesk with regard to other employees, Talkdesk's SVP People and Talent Shauna Geraghty sent a letter to Plaintiff threatening him over his departure. Specifically, Ms. Geraghty's letter stated:

> We are writing because we have grave concerns about what appears to be an aggressive and unlawful pattern of soliciting employees of Talkdesk, Inc. ("Talkdesk") by you both during and after your employment with Talkdesk. Talkdesk demands that you cease and desist from engaging all such unlawful acts immediately and provide written assurances that you will do so. Your conduct has resulted in a forfeiture of your Talkdesk equity.
>
> In connection with your employment as our President and Chief Operating Officer, you signed an offer letter on February 22, 2023 ("Employment Agreement") which contains the following restrictions:
>
> 8. No Solicitations. In consideration for your employment with the Company, you agree that during the term of your employment, and for a period of 12 months thereafter, you shall not directly or indirectly induce or attempt to induce or otherwise counsel, advise, solicit, or encourage (i) any Company employee to leave the Company's employ or accept employment with any other person or entity . . . You agree that the restrictions imposed upon you by the provisions of this section are fair and reasonable considering the nature of the Company's business and are reasonably required for the Company's protection.

30. Geraghty's allegation that Plaintiff was soliciting employees to join him at Sysdig was false. To the contrary, upon his resignation, Plaintiff was contacted by many Talkdesk employees expressing their admiration for Plaintiff and expressing their desire to join him at his new company. Plaintiff is informed and believes, and on that basis alleges, that Geraghty's letter attempting to enforce his employee non-solicitation clause was sent to him at the direction of Paiva in retribution for what Paiva perceived to be Plaintiff's disloyalty in leaving Talkdesk, as well as to send an <u>in terrorem</u> message to other employees, including California employees, from leaving Talkdesk employment to join Plaintiff at Sysdig.

31. Geraghty's letter was a direct violation of section 16600.5(b) of the Business & Professions Code, which provides, "An employer or former employer shall not attempt to enforce a contract that is void under this chapter regardless of whether the contract was signed and the employment was maintained outside of California."

32. At the time Geraghty sent her letter to Plaintiff, Talkdesk knew that Plaintiff's non-solicit provision was unlawful and violated California law. Plaintiff is informed and believes, and on that basis alleges, that on or about February 7, 2024, Talkdesk sent multiple employees at Talkdesk an email informing them that their employment agreements contained clauses, including their employee non-solicit provisions, that violated California law. These emails were sent pursuant to the requirements set forth in section 16600.1 of the Business & Professions Code. Accordingly, Talkdesk is attempting to enforce contractual provisions against Plaintiff it knows are illegal and unenforceable under California law.

**FIRST CLAIM FOR RELIEF**
**(VIOLATION OF CAL. BUS. & PROF. CODE § 16600.5)**

33. Plaintiff hereby incorporates by reference and re-alleges each of the foregoing allegations.

34. In 2023, the California Legislature enacted SB 699, codified in section 16600.5 of the Business & Professions Code, effective January 1, 2024, which declares that "[a]ny contract that is void under this chapter is unenforceable regardless of where and when the contract was signed." Cal. Bus. & Prof. Code § 16600.5(a). The statute provides that an employee may "bring a private action to enforce this chapter for injunctive relief or the recovery of actual damages, or both." Id., at § 16600.5(e)(1).

35. As a condition of his employment with Talkdesk, Plaintiff was subject to an Offer Letter Agreement that contained an employee non-solicitation provision that provided that for a period of 12 months after his departure from Talkdesk, he "shall not directly or indirectly induce or attempt to induce or otherwise counsel, advise, solicit, or encourage (i) any Company employee to leave the Company's employ or accept employment with any other person or entity; or (ii) any person who at the time of such inducement, counseling, advice, solicitation or encouragement had left the Company's employ within the previous six (6) months, to accept employment with any person or entity besides the Company." By the express terms of this Offer Letter Agreement, this provision was subject to California law.

36. This employee non-solicitation provision in the Offer Letter Agreement is unlawful under California law.

37. Defendant Talkdesk knew this provision was unlawful and unenforceable under California law, in light of the fact that it had informed employees of Talkdesk of this fact on or about February 7, 2024 pursuant to section 16600.1 of the Business & Professions Code.

38. Despite knowing this provision was unlawful and unenforceable under California law, Talkdesk, through Talkdesk's SVP People and Talent Shauna Geraghty, and at the direction and with the knowledge of Talkdesk's CEO Tiago Paiva and Chief Legal Officer David Middler, sent Plaintiff a letter on May 6, 2025 in an attempt to enforce this unlawful contract provision contained in the Offer Letter Agreement.

39. Plaintiff has been damaged by Talkdesk's attempts to enforce this unlawful provision, including by having Talkdesk cancel and/or abrogate his RSUs, which according to Talkdesk's valuation, are worth several million dollars, as well as other damages and attorney's fees and costs.

40. Pursuant to section 16600.5(d) of the Business & Professions Code, Talkdesk is also liable to Plaintiff for a civil violation, pursuant to section 17206 of the Business & Professions Code.

41. Plaintiff also seeks injunctive relief and any other remedies available, including reimbursement of his attorney's fees and costs pursuant to section 16600.5(e)(1) of the Business & Professions Code. As further provided by section 16600.5, as a former employee, Plaintiff is entitled to bring a private right of action to enforce this chapter for injunctive relief or for the recovery of actual damages, or both.

42. Plaintiff seeks further relief as specified in the prayer below.

**SECOND CLAIM FOR RELIEF**
**(UNFAIR BUSINESS PRACTICES IN VIOLATION OF**
**CAL. BUS. & PROF. CODE § 17200)**

43. Plaintiff hereby incorporates by reference and re-alleges each of the foregoing allegations.

44. Section 17200 of the California Business & Professions Code prohibits unfair

business practices by employers, including but not limited to, imposing and/or attempting to enforce employment contracts that violate sections 16600 and 16600.1 of the Business & Professions Code.

45. Talkdesk has engaged and continues to engage in unfair and/or unlawful business practices in California in violation of sections 16600, 16600.1, 16600.5, and 17200, et seq. of the California Business & Professions Code by committing the unlawful acts described above. Such acts include attempting to enforce unlawful contract provisions and attempting to unlawfully inhibit the recruitment of and free flow of employees in California. Talkdesk's unfair and unlawful business practices deprived and continue to deprive Plaintiff of rights he has in California. These practices constitute unfair and unlawful competition and provide an unfair advantage over Talkdesk's competitors who have been and/or are currently employing workers and are attempting to do so in honest compliance with the law.

46. Pursuant to section 17200 of the Business & Professions Code, Plaintiff seeks restitution, injunctive relief, and other available equitable remedies, as a direct and proximate result of Talkdesk's wrongful actions in amounts or under terms to be proven at trial.

**THIRD CLAIM FOR RELIEF**
**(ILLEGAL TERMS AND CONDITIONS OF EMPLOYMENT**

47. Plaintiff hereby incorporates by reference and re-alleges each of the foregoing allegations.

48. As stated above, with limited and narrow exceptions not applicable here, the California Business & Professions Code renders restrictive covenants such as employee non-solicits as completely illegal, null, and void.

49. As stated above, Plaintiff was subject to an unlawful employee non-solicit included in this Offer Letter Agreement which had a choice of law of California law. Talkdesk knew that the employee non-solicit contained in Plaintiff's Offer Letter Agreement was unlawful, as evidenced by the fact Talkdesk provided notice to other employees on or about February 7, 2024 informing them that the same or similar clauses were unenforceable under California law.

50. Talkdesk's attempts to enforce unlawful provisions constitute a violation of

section 432.5 of the California Labor Code, which states, "No employer, or agent, manager, superintendent, or officer thereof, shall require an employee or applicant for employment to agree, in writing, to any term or condition which is known by such employer, agent, manager, superintendent, or officer therefore to be prohibited by law."

51. Violations of section 432.5 of the Labor Code constitute a misdemeanor under section 433 of the California Labor Code.

52. As a direct and proximate result of Talkdesk's wrongful actions, Plaintiff has been harmed in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**
**(DECLARATORY JUDGMENT)**

53. Plaintiff hereby incorporates by reference and re-alleges each of the foregoing allegations.

54. An actual, present, and justiciable controversy exists between Plaintiff and Talkdesk concerning the validity and enforceability of the employee non-solicit contained in Plaintiff's Offer Letter Agreement, and specifically, whether such provisions are void under California law and public policy banning restraints of trade and employee mobility.

55. The employee non-solicit at issue in Plaintiff's Offer Letter Agreement is illegal, void, and unenforceable under California law and public policy, including the provisions cited above.

56. Plaintiff seeks a declaratory judgment that, among other things, (a) he may engage in his chosen profession, including by soliciting employees to work with him if he so chooses, regardless of whether such work violates the terms of Talkdesk's agreements; (b) Talkdesk may not attempt to engage in unfair or unlawful behavior, such as threatening to enforce employee non-solicit provisions against Plaintiff; (c) Plaintiff did not breach the employee non-solicitation provision contained in his Offer Letter Agreement, and (d) Talkdesk is required to restore Plaintiff to the same position he was in at the time of his departure from Talkdesk, including by restoring his RSUs in their entirety, and that it must cease any further attempts to deprive him of any benefits, wages, stock, or other monies as a result of his alleged solicitation of employees.

57. A judicial declaration and judgment are necessary and appropriate at this time, and under the circumstances, so that Plaintiff and Talkdesk may ascertain their respective rights, duties, and future obligations under the Offer Letter Agreement.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows:

1. For the declaratory relief requested in the Complaint;
2. For the other equitable relief, including injunctive relief, requested in the Complaint;
3. For general and special damages, plus interest, according to proof at trial;
4. For statutory damages and civil penalties, plus interest, according to proof at trial;
5. For costs incurred herein, including reasonable attorney's fees as permitted by law; and
6. For such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands trial by jury on all triable claims and issues.

DATED: June 4, 2025

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/ Thomas M. McInerney
Thomas M. McInerney
Graham M. Helm
Rabbie Mojaddidi
Attorneys for Plaintiff
WILLIAM WELCH